UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CAUSE NO. 3:21-CR-41 RLM-MGG |
| | ) |
| JOSE REYNA | ) |

## OPINION AND ORDER

Jose Reyna was indicted with one count of possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k). Mr. Reyna entered a guilty plea and moved to dismiss the criminal case just before sentencing. He argues that § 922(k) violates the Second Amendment to the U.S. Constitution in light of New York State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111 (2022). After briefing from the parties, the court held oral arguments on December 5. The court denies Mr. Reyna's motion to dismiss [Doc. 28] because the plain text of the Second Amendment doesn't reach a handgun without a serial number.

### BACKGROUND[1]

St. Joseph County Police Department officers pulled Jose Reyna over on February 17, 2021, because of a defective headlight. Mr. Reyna presented the

---

[1] The court takes these facts from the presentence investigation report prepared by the U.S. Probation Office for Mr. Reyna's sentencing. [Doc. 22]. Mr. Reyna pleaded guilty to the offense and later filed a notice of no objection to the presentence investigation report. [Doc. 21].

officers with a picture ID but not a driver's license. His car smelled of marijuana. The officers searched his car and found a handgun with the serial number scratched off as well as marijuana and other supplies suggestive of marijuana distribution.

Mr. Reyna was arrested and agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives eventually interviewed him. Mr. Reyna told the ATF officers that he sells marijuana and carried the handgun to protect himself. He admitted to having scratched off the handgun's serial number with a knife and described instances when he fired the gun to scare of adversaries when drug deals had gone sour.

A grand jury indicted Mr. Reyna on one count of possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k). The indictment charged Mr. Reyna with unlawful possession on or about February 17, 2021. At that time, he had one adult misdemeanor conviction and one juvenile misdemeanor adjudication. Mr. Reyna was in state custody when indicted and was arrested on the federal warrant about one year later in May 2022. He pleaded guilty without a plea agreement and was to be sentenced on October 19.

Mr. Reyna filed this motion to dismiss on October 17. Mr. Reyna argues that his case should be dismissed because § 922(k) violates the Second Amendment. He contends that § 922(k) regulates possession of firearms, which is covered by the Second Amendment's plain text, and that the government hasn't shown, and can't show, that such a regulation is consistent with our

2

nation's history and tradition of firearm regulation. *See* N.Y. State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111 (2022).

STANDARD OF REVIEW

A defendant ordinarily must move to dismiss an indictment for failure to state an offense in a pretrial motion, Fed. R. Crim. P. 12(b)(3)(B)(v), but a court can consider an untimely motion if the defendant shows good cause. Fed. R. Crim. P. 12(c)(3). A defendant can withdraw a guilty plea after entering a guilty plea and before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). Guilty pleas "should not lightly be withdrawn," but can be withdrawn for factual or legal innocence or if the defendant didn't enter a plea knowingly and voluntarily. United States v. Brown, 973 F.3d 667, 715 (7th Cir. 2020).

ANALYSIS

Mr. Reyna argues that his entire case must be dismissed because the statute he was charged with and to which he pleaded guilty impermissibly burdens the Second Amendment right to keep and bear arms. He raises this argument in light of New York State Rifle & Pistol Assoc'n v. Bruen, 142 S. Ct. 2111 (2022), which was decided shortly before he entered a guilty plea, and which clarified how courts are to evaluate Second Amendment challenges to gun regulations. If his argument is correct and § 922(k) violates the Second Amendment, his claim to legal innocence is fair and just reason for him to

3

withdraw his guilty plea and for the court to grant his motion to dismiss the indictment. The government argues that because N.Y. State Rifle was decided before Mr. Reyna entered his guilty plea, this isn't the sort of case in which constitutional law changes between a guilty plea and sentencing. *See* United States v. Mays, 593 F.3d 603, 607 (7th Cir. 2010). This is no reason to dismiss Mr. Reyna's motion without reaching the merits: successfully showing that § 922(k) is unconstitutional would show that his guilty plea wasn't knowing or voluntary, which is itself good reason to grant a motion to withdraw his guilty plea and then dismiss the case.

Before N.Y. State Rifle, courts coalesced around a two-step test for Second Amendment challenges to gun regulations. Id. at 2125–2126. This two-step test first asked whether the regulated conduct was within the Second Amendment's scope. Id. If so, courts applied some form of means-ends scrutiny to the challenged regulation. Id.

The N.Y. State Rifle decision eliminated means-ends scrutiny and clarified that Second Amendment challenges are based on the Second Amendment's text as well as history and tradition. Id. at 2129–2130. A regulation doesn't offend the Second Amendment if the Second Amendment's plain text doesn't cover the regulated conduct. Id. If the Second Amendment's plain text covers the regulated conduct, the conduct is presumptively protected, and the government bears a burden of showing that the regulation is consistent with history and tradition. Id. Only if the government affirmatively shows that the regulation is equivalent

4

or analogous to well-established historical regulations can the regulation survive Second Amendment scrutiny. Id. at 2127, 2130.

Mr. Reyna argues that § 922(k)'s regulated conduct is presumptively protected because the Second Amendment's plain text covers it, and that the government hasn't shown that § 922(k) is consistent with history and tradition. The government responds that § 922(k)'s regulated conduct isn't covered by the Second Amendment's plain text, for a few different reasons, and that if § 922(k) regulates protected conduct, the regulation is justified by various laws regulating guns and gunpowder.

The parties raise as a threshold issue whether Mr. Reyna can bring a facial challenge to § 922(k). To succeed on a facial challenge, a party must show that a statute is unconstitutional in all applications. City of L.A. v. Patel, 576 U.S. 409, 415, 418 (2015). Mr. Reyna contends that "§ 922(k) is unconstitutional in all of its applications because it cannot satisfy the Bruen test." [Doc. 37]. The government argues that Mr. Reyna is barred from bringing a facial challenge, relying on Baer v. Lynch, 636 F. App'x 695, 697 (7th Cir. 2016). The defendant in Baer argued that statutes banning firearm possession by felons who are no longer dangerous facially violated the Second Amendment. Id. The court rejected this argument, explaining that "Second Amendment claims cannot rest on a facial overbreadth challenge . . . . [Defendant] cannot challenge the federal and state statutes on the ground that they 'may conceivably be applied unconstitutionally to others, in other situations.'" Id. (citing United States v.

5

Skoien, 614 F.3d 638, 645 (7th Cir. 2010) (en banc); Broadrick v. Oklahoma, 413 U.S. 601, 610 (1973)).

Unlike the defendant in Baer v. Lynch, Mr. Reyna's facial argument doesn't depend on whether applying the law to some subset of people other than him might violate the Second Amendment, so it's not a facial overbreadth argument. His facial challenge requires showing that every application of the law is unconstitutional. That's the sort of argument Mr. Reyna can bring, so Mr. Reyna's motion doesn't fail for being a facial challenge. *See* City of L.A. v. Patel, 576 U.S. at 415 (explaining that a Second Amendment facial challenge was allowed in District of Columbia v. Heller, 554 U.S. 570 (2008)).

*Whether the Second Amendment's Plain Text Covers § 922(k)'s Regulated Conduct.*

The first step of a Second Amendment challenge is deciding whether the regulated conduct falls within the scope of the Second Amendment's plain text. N.Y. State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. at 2129–2130.

The Second Amendment reads in full, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Second Amendment's plain meaning depends on how voters at the time of ratification would understand the normal meaning of words and phrases, as well as the idiomatic meaning of words and phrases. District of Columbia v. Heller, 554 U.S. 570, 576–577 (2008).

The text, read as a whole, "guarantee[s] the individual right to possess and carry weapons in case of confrontation." Id. at 592. Keeping arms means the right to possess arms for self-defense in the home, id. at 628–629, and carrying arms means the right to possess arms for self-defense in public. N.Y. State Rifle, 142 S. Ct. at 2122. Second Amendment rights are individually held, as indicated most clearly by the text's reference to "the people," District of Columbia v. Heller, 554 U.S. at 579–581. But the plain text also reveals that the Second Amendment has limits; the very same phrase that indicates an individual right — "the people" — also limits the Second Amendment right to members of the political community and excludes criminals. Id. at 580; Range v. Att'y Gen. U.S., 53 F.4th 262, 266, 284 (3d Cir. 2022) (per curiam) (citing N.Y. State Rifle, 142 S. Ct. at 2131); *see also* United States v. Yancey, 621 F.3d 681, 684–685 (7th Cir. 2010). The Second Amendment's text doesn't protect keeping and bearing any weapon in every way possible. District of Columbia v. Heller, 554 U.S. at 626–627. A weapon generally is covered if a person can carry it, N.Y. State Rifle v. Bruen, 142 S. Ct. at 2132, but not if the weapon is uncommon or unusually dangerous or not typically used by law-abiding people for lawful purposes. Id. at 2128. (citing District of Columbia v. Heller, 554 U.S. at 626, 627; United States v. Miller, 307 U.S. 174, 179 (1939)).

The first step under N.Y. State Rifle asks about the regulated conduct, so the court must determine how specifically or generally to define § 922(k)'s regulated conduct: is it mere "possession of a firearm" or "possession of a firearm *with an obliterated serial number*"?

Mr. Reyna argues that § 922(k) regulates mere possession. He relies on United States v. Price, No. 2:22-cr-00097, 2022 U.S. Dist. LEXIS 186571 (S.D. W. Va. Oct. 12, 2022), which sustained a Second Amendment challenge to § 922(k). The Price court reasoned that § 922(k) regulated mere possession because a person could lawfully purchase or transfer a firearm, but that person suddenly becomes a criminal under § 922(k) if the serial number is destroyed. Id. at *7–8. The court used the example of a father who lawfully purchases a firearm and then destroys the serial number. The example continues with the daughter, who lawfully receives the gun from her father and displays it in his memory. She, too, unlawfully possesses the gun because its serial number is obliterated. Neither of them was made a criminal for destroying a serial number or for an unlawful purchase or transfer, so it's their possession that's regulated.

The government objects to this line of reasoning, arguing that such a reading is artificially narrow. The government relies on part on United States v. Holton, No. 3:21-CR-0482-B, 2022 U.S. Dist. LEXIS 200327, at *9 (N.D. Tex. Nov. 3, 2022). The Holton court focused on how a serial number doesn't relate to the conduct protected in Heller and N.Y. State Rifle — a serial number is unrelated to handgun possession in the home and handgun possession in public. The government further argues that Mr. Reyna could possess other guns with serial numbers under § 922(k), so mere possession of a firearm can't be the regulated conduct.[2]

---

[2]  Although it plays no role in today's decision, it's worth remembering that Mr. Reyna's possession of this particular firearm was, at least when he wasn't

8

Reading § 922(k)'s regulated conduct as mere possession is inconsistent with how the Supreme Court evaluates Second Amendment challenges. In Heller, the challenged regulation prohibited handgun possession in the home, so the Court defined the regulated conduct as handgun possession in the home. District of Columbia v. Heller, 554 U.S. at 628. In N.Y. State Rifle, the challenged regulation prohibited publicly carrying a handgun, so the Court defined the regulated conduct as publicly carrying a handgun. N.Y. State Rifle v. Bruen, 142 S. Ct. at 2134. In neither case did the Supreme Court distill the challenged regulation to so abstract a level as mere possession or mere carrying of a firearm.

Nor would it make sense to define regulated conduct as mere possession in light of the comparator — the Second Amendment's plain text. If § 922(k)'s regulated conduct is mere possession, any number of other challenged regulations would similarly boil down to mere possession, then promptly and automatically proceed to Step Two. For Step One to have any meaning, the regulated conduct must be defined specifically enough that it can meaningfully compare to the Second Amendment's plain text — a plain text that is more complex than mere possession. To do otherwise would be to compare the regulated conduct to the Second Amendment's bare and oversimplified text — keeping and bearing arms, without the original public meaning emphasized in Heller and N.Y. State Rifle.

---

dealing marijuana, perfectly legal. It was his own obliteration of the serial number that turned the firearm into something else.

Having concluded that § 922(k)'s regulated conduct is "possession of a firearm with an obliterated serial number" and not "mere possession," the court turns its inquiry to whether the Second Amendment's plain text covers that conduct. Mr. Reyna argues that possession of a gun with an obliterated serial number is protected because such a gun can still be used for self-defense. Prohibiting possession of deserialized guns reduces his access to the universe of guns that can be used for self-defense. The government argues that the only purpose of a deserialized gun is to evade the law; law-abiding citizens ordinarily don't use deserialized guns for lawful purposes, keeping a serial number doesn't reduce a gun's usefulness for self-defense, and obliterating a serial number doesn't make a gun more useful for self-defense. "With or without a serial number, a pistol is still a pistol." United States v. Marzzarella, 614 F.3d 85, 94 (3d Cir. 2010).

The Heller Court made clear that the Second Amendment excludes "those weapons not typically possessed by law-abiding citizens for lawful purposes." District of Columbia v. Heller, 554 U.S. at 625 (discussing short-barreled shotguns in United States v. Miller, 307 U.S. 174 (1939)); *see also* id. at 623 ("Miller stands only for the proposition that the Second Amendment right, whatever its nature, extends only to certain types of weapons."). This limit on the Second Amendment right arises from the Second Amendment's text; the Heller Court explained that the plain meaning of "militia" and the relationship between the Second Amendment's operative clause and prefatory clause show that the Second Amendment protects common weapons used for lawful purposes. Id. at

624–625. This limitation comes from the text of the Second Amendment, so whether a particular type of gun is typically used by law-abiding citizens for lawful purposes is a proper question at the first step of the N.Y. State Rifle analysis.[3]

Guns with obliterated serial numbers belong to "those weapons not typically possessed by law-abiding citizens for lawful purposes" so possession of such guns isn't within the Second Amendment's scope. District of Columbia v. Heller, 554 U.S. at 625. Guns with obliterated serial numbers are useful for criminal activity because identifying who possessed a firearm is more difficult when the serial number is destroyed. United States v. Marzzarella, 614 F.3d 85, 98 (3d Cir. 2010). By using a gun without a serial number, a criminal ensures he has a greater higher likelihood of evading justice. Id. Mr. Reyna might be right that a deserialized gun is just as useful for self-defense as a gun with its serial number intact, but that doesn't suggest that deserialized guns are typically used by law-abiding citizens for lawful purposes. A law-abiding citizen who uses a gun for self-defense has no reason to prefer a deserialized gun to a gun with serial

---

[3] Nothing in N.Y. State Rifle undermines Heller's discussion of textual limits on types of firearms. The N.Y. State Rifle Court applied Heller and purported to clarify, not change, its methodology. N.Y. State Rifle v. Bruen, 142 S. Ct. at 2128–2129; id. at 2131 ("The test that we set forth in Heller and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding."); id. at 2134 ("Having made the constitutional standard endorsed in Heller more explicit, we now apply that standard to New York's proper-cause requirement."); id. at 2138 ("Under Heller's text-and-history standard, the proper-cause requirement is therefore unconstitutional."); see also id. at 2161 (Kavanaugh, J., concurring) ("The Court employs and elaborates on the text, history, and tradition test that Heller and McDonald require for evaluation whether a government regulation infringes on the Second Amendment.").

number intact. That a law-abiding citizen could use a gun with an obliterated serial number for lawful self-defense isn't evidence that guns with obliterated serial numbers are *typically* used by law-abiding citizens for lawful self-defense.

Mr. Reyna's objection that § 922(k) reduces the pool of guns available to him for self-defense doesn't change the outcome. Prohibiting possession or use of a particular type of gun might bring a regulation within the Second Amendment's scope if the class of firearms is defined by its functionality. For instance, in Heller, the government argued that banning all handguns was permissible because a would-be gun owner could still possess some other type of gun, like a rifle. District of Columbia v. Heller, 554 U.S. at 629. The Court rejected that argument because of handguns' characteristics that make them helpful and common for lawful self-defense:

> It is enough to note, as we have observed, that the American people have considered the handgun to be the quintessential self-defense weapon. There are many reasons that a citizen may prefer a handgun for home defense: It is easier to store in a location that is readily accessible in an emergency; it cannot easily be redirected or wrestled away by an attacker; it is easier to use for those without the upper-body strength to lift and aim a long gun; it can be pointed at a burglar with one hand while the other hand dials the police. Whatever the reason, handguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid.

District of Columbia v. Heller, 554 U.S. at 629.

While the prohibition in Heller applied to a class of guns defined by characteristics that brought them within the Second Amendment's scope (they are useful and common for lawful self-defense), the § 922(k) prohibition applies to a class of guns defined solely by a nonfunctional characteristic: the serial

12

number. *See* United States v. Marzzarella, 614 F.3d at 94 ("Furthermore, it also would make little sense to categorically protect a class of weapons bearing a certain characteristic wholly unrelated to their utility. Heller distinguished handguns from other classes of firearms, such as long guns, by looking to their functionality.") (citing District of Columbia v. Heller, 554 U.S. at 629).

That § 922(k)'s regulated conduct is outside scope of the Second Amendment is enough to decide Mr. Reyna's challenge to his indictment and guilty plea. Mr. Reyna's motion to dismiss must be dismissed on this basis so the court declines to consider whether the government's evidence of historical gun and gunpowder regulations justify § 922(k).

## CONCLUSION

The Second Amendment right to keep and bear arms doesn't extend to arms that aren't typically possessed by law-abiding citizens for lawful purposes. Law-abiding citizens don't typically possess firearms with obliterated serial numbers for lawful purposes, so Mr. Reyna's indictment and guilty plea don't offend the Second Amendment. Accordingly, the court DENIES Mr. Reyna's motion to dismiss. [Doc. 28]. The court will schedule Mr. Reyna's sentencing hearing by separate order.

SO ORDERED.

ENTERED: December 15, 2022

/s/ Robert L. Miller, Jr.
Judge, United States District Court